ROBERTS, J.
Petitioner filed for distribution of escheated property with the Director of the Division of State Lands. Since petitioner failed to meet the requirements of ORS 116.253 the petition was denied. Petitioner appeals.
Mitchel N. Chongorskey, a native of Bulgaria but a long time resident of Corvallis, Oregon, died intestate at Corvallis, on March 13, 1964. His estate was administered in Benton County. Veska S. P. Hitcheva, a resident and national of Bulgaria, appeared in the administration proceedings through counsel. She claimed the estate as the decedent’s next of kin and heir at law and she was, in fact, adjudged to be the next of kin and heir at law.
However, the State Land Board filed a "Petition for Findings and Order of Escheat” alleging that ORS 111.070[1] prevented Hitcheva from receiving the es *[842] tate, and on April 26,1966 the court entered its order [2] in favor of the State Land Board. The "Order Approving Final Account” entered on September 23, 1966 directed the escheat and distribution. On October 7, 1966, the administrator paid to the State Land Board the sum of $37,057.32 as the escheated estate of Mitchel N. Chongorskey.
In January, 1968, the United States Supreme Court declared ORS 111.070 unconstitutional in Zschernig v. Miller, 389 US 429, 88 S Ct 664, 19 L Ed 2d 683 (1968). The 1969 Oregon Legislature revised the entire probate code and the unconstitutional statute was repealed.
Hitcheva reopened the issue on September 14,1976 by filing her "Petition and Claim for Distribution of Escheated Estate” with the Director of the Division of State Lands. The petition was denied by the Director of State Lands on March 18, 1977.
Petitioner relies on the unconstitutionality of the law under which the estate was first administered and claims she should now receive the estate since the law was unconstitutional ab initio and therefore unconstitutional at the time of the administration of the estate even though the court had not yet declared it so.
*[843] The effect of a mistake of law occurring in a court is to subject the judgment of that court to direct attack on appeal.
"Oregon has also held that, as a general rule, if the court has jurisdiction over the parties and the subject matter, the ensuing judgment, even if erroneous is not void and cannot be collaterally attacked until reversed or annulled, no matter how erroneous it may be.” Rogue Val. Mem. Hosp. v. Salem Ins., 265 Or 603, 611, 510 P2d 845 (1973).
Here the probate court had subject matter jurisdiction and jurisdiction over the parties.
Petitioner argues that at the time the estate was probated the law was clear and that no good would have been accomplished by an appeal. The same argument was made by claimants to the estate of one Horman in California. The claimants had failed to appear at the original proceeding and would have been denied their claim had they appeared under the earlier California case of Estate of Gogabashvele, 195 Cal App2d 503, 16 Cal Rptr 77 (1961). In Estate of Larkin, 65 Cal2d 60, 52 Cal Rptr 441, 416 P2d 473 (1966), the California court disapproved of the holding in Gogabashvele, supra. Thereafter, the claimants to Horman’s estate filed claims arguing that they should not be barred by their failure to appear since their appearance would have been futile in light of the state of the law at the time. In dismissing the claim, the court said:
"* * * [Claimants were not] prevented from challenging the soundness of the reasoning in Gogabashvele. That is precisely what was successfully done by the claimants in Larkin. * * *” In Re Estate of Horman, 485 P2d 785, 791, 5 Cal3d 62, 95 Cal Rptr 433, cert denied 404 US 1015 (1971).
The same is true of the present case. Petitioner could have challenged the statute as was done in Zschernig v. Miller, supra.
*[844] The petition in this case might be deemed to present a claim under ORS 116.253, which allows relief in certain circumstances to persons having valid claims to property which has been escheated to the state. The petitioner cannot prevail under the statute, however, since one requirement imposed by ORS 116.253 is:
* * * *
"(c) That at the time the property escheated to the state the claimant had no knowledge or notice thereof;
In this case, it is conceded that petitioner was before the probate court originally and therefore had knowledge of the property and the escheat.
Affirmed.

 "(1) The right of an alien not residing within the United States or its territories to take either real or personal property or the proceeds thereof in this state by succession or testamentary disposition, upon the same terms and conditions as inhabitants and citizens of the United States, is dependent in each case:
"(a) Upon the existence of a reciprocal right upon the part of citizens of the United States to take real and personal property and the proceeds thereof upon the same terms and conditions as inhabitants and citizens of the country of which such alien is an inhabitant or citizen;
"(b) Upon the rights of citizens of the United States to receive by payment to them within the United States or its territories money originating from the estates of persons dying within such foreign country; and
"(c) Upon proof that such foreign heirs, distributees, devisees or legatees may receive the benefit, use or control of money or property from estates of persons dying in this state without confiscation, in whole or in part, by the governments of such foreign countries.
"(2) The burden is upon such nonresident alien to establish the fact of existence of the reciprocal rights set forth in subsection (1) of this section.
"(3) If such reciprocal rights are not found to exist and if no heir, devisee or legatee other than such alien is found eligible to take such *[842] property, the property shall be disposed of as escheated property.” ORS 111.070.
A form of this statute was enacted by Oregon in 1937 and more stringent conditions were imposed on non-resident aliens in 1951 resulting in the statutory language set out above. A few other states enacted similar legislation commonly known as "Iron Curtain Laws.”

The April 26, 1966 Order read in part:
"the evidence before the court does not establish the existence of reciprocity of inheritance rights as required by ORS 111.070 with respect to the country of Bulgaria as of the date of death of the decedent Mitchel N. Chongorskey on March 13,1964, and that the net proceeds of this estate, situated in the State of Oregon,, have escheated to and become the property of the State of Oregon as of the date of death of decedent.”